```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA

WHITE HAUL TRANSPORT, INC.                        CIVIL ACTION

VERSUS                                            NO. 06-11260

COASTAL BRIDGE COMPANY, L.L.C.,                   SECTION "B" (4)
RCS CONTRACTORS, INC., AND
SHAW ENVIRONMENTAL, INC.
```

## ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment (Rec. Doc. No. 26). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Defendant's Motion is **DENIED IN PART** and **GRANTED IN PART.** Plaintiff's claims are dismissed, except for its newly asserted claim of breach of the joint venture agreement. **IT IS FURTHER ORDERED** that Plaintiff amend its Complaint **within 10 days** to reflect its assertion of joint venture status.

### BACKGROUND

In response to the lack of housing after Hurricane Katrina, the Federal Emergency Management Authority ("FEMA") contracted with Shaw to transport and install travel trailers. To fulfill the FEMA contract, Shaw contracted with RCS Contractors, Inc. ("RCS"), who subcontracted with Coastal Bridge Co. ("Coastal"), who then subcontracted with Plaintiff White Haul Transport, Inc. ("White Haul") without paying White Haul for the work performed.

On December 22, 2006, White Haul filed a complaint against

1

RCS, Shaw, and Coastal. White Haul alleges that RCS is liable for breach of contract, repudiation of contract, oral breach of contract, breach of contract accompanied by a fraudulent act, violation of Louisiana's Unfair Trade Practices Act, unjust enrichment/*quantum meruit*, and negligent interference with contractual rights. On July 17, 2007, this Court granted Shaw's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), citing the absence of a contractual relationship between Shaw and White Haul as the basis. RCS and Coastal remain as Defendants in this matter.

Defendant RCS contends that it never entered into a contract with Plaintiff regarding the installation of travel trailers pursuant to Shaw Environmental Purchase Order #131488, nor did Defendant approve of a subcontract with Plaintiff. Therefore, Plaintiff's allegations concerning breach of contract and related claims prove erroneous. In addition, Defendant argues that Plaintiff's allegations regarding unjust enrichment/*quantum meruit* is without merit, as profits realized by Defendant were neither increased nor decreased by Plaintiff's participation and/or termination. Defendant also states that Plaintiff's allegation regarding the violation of Louisiana's Unfair Trade Practices Act is barred by the one year peremptive period set forth in La. R.S. 51:1409(e).

Plaintiff acknowledges that there was no written contract or subcontract between RCS and White Haul, but instead avers that the

2

relationship between RCS, White Haul, and Coastal constituted a joint venturer relationship.  The existence of this joint venture allegedly gives White Haul rights against RCS as a co-venturer and against the venture itself.  Plaintiff asserts that its rights sound in tort (i.e. breach of RCS' fiduciary duty) and contract (i.e. breach of the joint venture agreement), and therefore asserts Defendant's motion should be denied.

### DISCUSSION

**A.   Summary Judgment Standard**

Summary judgment is proper if the pleadings, depositions, interrogatory answers and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2554-55 (1986).  A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the non-moving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial.  *Webb v. Cardiothoracic Surgery Associates of North Texas*, 139 F.3d 532,

536 (5th Cir. 1998).  The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue.  *Id.*  Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment.  *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).  The plaintiff must present an issue of material as to every one of the essential elements of each of his claims on which he bears the burden of proof at trial.  *Celotex,* 477 U.S. at 322; *see also Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1444 (5th Cir. 1993).

**B.  Joint Venture Status**

Throughout the Complaint, Plaintiff makes allegations regarding breach of contract and asserting related claims based on its subcontractor relationship with RCS and Coastal.  Although Plaintiff acknowledges in its opposition to Defendant's Motion for Summary Judgment that no written contractual agreement existed between Plaintiff and Defendants, the Court must first address whether Plaintiff's allegations of subcontractor status recurring throughout the Complaint prove inconsistent with Plaintiffs new assertion of joint venture status since Plaintiff is bound to its pleadings.  *See Burch v. City of Nacogdoches*, 174 F.3d 615, 617 n.5 (5th Cir. 1999).

A joint venture results from two or more persons undertaking to combine their efforts, knowledge, property or labor to engage in

4

anc carry our a single business venture for joint profit, where profits and losses are shared, with each party having some right of control over the business. *Garber v. Badon & Ranier*, 2008 WL 867294, at *8 (La.App. 3 Cir. Apr. 8, 2008). A joint venture arises only where the parties intended the relationship to exist, and they are ultimately predicated upon contract, either express or implied. *Riddle v. Simmons*, 922 So.2d 1267, 1281 (La.App. 2 Cir. 2006); *see also Guillory v. Hayes*, 576 So.2d 1136, 1142 (La.App. 3 Cir. 1991). There must be a contract between the parties establishing a juridical entity and requiring contribution by all parties of effort or resources. *Latioloas v. BFI of La., Inc.*, 567 So.2d 1159 (La. App. 3 Cir. 1990). Such contributions must be in determined proportions, require joint effort, and involve mutual risk and sharing of profits. *Id.*

Contrasting the mutual obligations shared by joint venturers, a subcontractor simply enters into an agreement with a contractor, rather than the principal party whose performance is payment in exchange for the provision of goods or service or the completion of a project. *Texaco Exploration and Production, Inc. V. AmClyde Engineered Products, et al.*, 448 F.3d 760, 778-779. *See, e.g.*, Black's Law Dictionary 1464 (8th ed. 2004). "A subcontractor is one who takes a portion of a contract from the principal contractor or another subcontractor." *Avondale Indus., Inc. v. Int'l Matine Carriers, Inc.*, 15 F.3d 489, 494 (5th Cir. 1994). Subcontractor

5

status does not involve the sharing of profits or resources as do joint ventures; it is the simple exchange of performance or service for payment. Hence, one cannot subcontract for an entity while simultaneously serving as a joint venturer in that entity on the same undertaking. As such, Plaintiff's claims regarding its joint venturer status requires the amendment of its Complaint.

In *Sherman v. Hallbauer*, the plaintiffs' memorandum in opposition of the defendant's motion for summary judgment advanced a contractual legal theory of the case sharply differing from the allegations of misrepresentation and negligence contained within the original complaint. 455 F.2d 1236, 1238-1242 (5th Cir. 1972). The Fifth Circuit held that because Fed. R. Civ. P. 15 permits a party to amend his or her pleadings out of time by leave of court, and commands that such leave be freely given when justice requires, the district court should have construed the plaintiffs' revised theory of the case set forth in their memorandum in opposition to summary judgment, as a motion to amend the pleadings filed out of time. *Id*. at 1242; *see also Meador v. McFaddin*, 172 F.3d 869 (5th Cir. 1999). Accordingly, this Court will construe the allegations regarding the existence of a joint venture among RCS, Coastal, and White Haul as a motion to amend Plaintiff's Complaint, and hereby grants leave to Plaintiff to amend consistent with this opinion.

Plaintiff alleges that the existence of a joint venture gives Plaintiff rights against RCS as a co-venturer and against the

venture itself. Plaintiff's rights sound in tort (i.e. breach of RCS' fiduciary duty) and contract (i.e. breach of the joint venture agreement). Plaintiffs aver that while no written contract between RCS and White Haul for transport and installation of travel trailers exists; and there is no such contract between RCS and Coastal. Instead, Plaintiff claims that RCS, Coastal Bridge, and White Haul formed a joint venture, whereby each party contributed labor and materials to the installation job.

In *Rester v. Aetna Cas. & Surety Co.*, the court states, "it is well settled that what constitutes a joint venture is a question of law, while the existence or nonexistence of a joint venture is a question of fact." 598 So.2d 673, 676 (La. App. 3 Cir. 1992); *Grand Isle Campsites, Inc. v. Cheek*, 262 La. 5, 262 So.3d 350 (La. 1972); *Latiolais v. BFI of Louisiana, Inc.*, 567 So.2d 1159 (La.App. 3 Cir. 1990). However, if Plaintiff is unable to present evidence in support of the pertinent law or the evidence presented negates the existence of one of the essential elements then summary judgment may be proper. *See Moroux v. Toce*, 943 So.2d 1263, 1271. (La. App. 3 Cir. 2006). In *Moroux*, the Louisiana Appellate Court affirmed the district court's grant of partial summary judgment since Plaintiff admitted to not having authority or sharing mutual risk, elements necessary for the existence of a joint venture.

In addition to the express or implied intent to form a joint venture contract, the essential elements of joint ventures include:

(1) a contract between two or more persons; (2) the establishment of a juridical entity or person; (3) contribution by all parties of either efforts or resources; (4) the contribution must be in determinate proportions; (5) a joint effort; (6) mutual risk vis-a-vis losses; and (7) the sharing of profits. *Cajun Electric Power Cooperative, Inc., v. McNamara*, 452 So.2d 212, 215 (La.App. 1st Cir. 1984).

The essential elements of a joint venture are generally the same as those of partnership, and accordingly, joint ventures are governed by the law of partnership. *Cajun Electric Power Cooperative, Inc. v. McNamara*, 452 So.2d 212, 215 (La.App. 1st Cir. 1984), *writ denied*, 458 So.2d 123 (La. 1984). There is a fiduciary duty between members of a joint venture similar to that which exists between partners in a partnership. *Moroux v. Toce*, 943 So.2d 1263 (La.App. 3 Cir. 2006). A partner can be expelled for just cause LSA-CC art. 2820.

Plaintiff has proffered evidence in the form of emails regarding the potential existence joint efforts, resources, determinate proportions of contribution, and the possible intent to create a joint venture.[1] Plaintiff also offers an email as

---

[1] While the intent to enter into a joint venture remains in doubt, this material factual dispute must be resolved by the trier-of-fact. The intent may be determined by the particular facts and circumstances of this case at trial. *See Gilbeau v. Liberty Mutual Insurance Company*, 324 So.2d 571 (La. App. 1st Cir. 1975).

evidence regarding the shared risk, asserting that the penalties for not having permits satisfies the mutual risk element.  While Defendant argues that RCS only contracted with Coastal Bridge, RCS maintained total control, and no joint venture had ever been embarked upon, these allegations unaccompanied by independent evidence simply display the material factual disputes present in this case.

**C.  Peremption of Louisiana's Unfair Trade Practices Act**

Defendant RCS avers that Plaintiff's accusations regarding the violation of Louisiana's Unfair Trade Practices Act ("LUPTA") is barred by the one year peremptive period set forth in La. R.S. 51:1409(e).  La. R.S. 51:1409(e) states that, "[t]he action provided by this section shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action."  This one-year period proves peremptive, rather than merely prescriptive, such that the period may not be tolled or interrupted. *Safford v. PaineWebber, Inc.*, 730 F.Supp. 15, 19 (E.D. La. 1990); *Neill v. Rusk*, 745 F.Supp. 362, 363-65 (E.D. La. 1988).

While Plaintiff has alleged that the alleged unfair methods of competition and deceptive acts occurred before Coastal terminated its contract, Defendant's assertion that the peremptive period has elapsed does not hold true.  Plaintiff was terminated on December 23, 2005 and filed suit on December 22, 2006, 364 days later. Defendant asserts that the continuing violation doctrine is

9

inapplicable to unfair trade and practice claims, and cites as support *Glod v. Baker*, 899 So.2d 642 (La. App. 3 Cir. 3/23/05), writ denied, 2005-1574 (La. Jan. 13, 2006).  However, in *James v. New Century Mortgage Corp., et al.*, Judge Africk declined to apply *Glod* to a case involving LUPTA before the Eastern District of Louisiana. 2006 WL 2989242, at *7 (E.D. La. Oct. 17, 2006).  He highlighted that *Glod* relied upon *Canal Marine Supply Inc. v. Outboard Marine Corp.*, 522 So.2d 1201 (La.App. 4th Cir. 1988), which stood for the proposition that claims file more than one year giving rise to the violation were perempted even if the Plaintiff had been unaware of some of the acts.  However, Canal Marine did not address the continuing tort doctrine. *Id*.  As such, Judge Africk followed the 5th Circuit ruling of *Tubos De Acero de Mexico v. American International Investment Corp*, which stood for the proposition that "the continuing violation doctrine applies to the LUPTA peremptive period."  292 F.3d 471, 482 (5th Cir. 2002).

In examining the merits of the LUPTA claim, Defendant presents the affidavits of Roland Alonso and Bobby Overall, which refute that claim.  Plaintiff fails to go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Webb v. Cardiothoracic Surgery Associates of North Texas*, 139 F.3d 532, 536 (5th Cir. 1998).  In fact, Plaintiff fails to respond to Defendant's Motion

for Summary Judgment on this issue altogether.[2] Accordingly, and finding merit for Defendant's motion here, this Court grants summary judgment in favor of Defendant RCS regarding the LUPTA claim.

## *CONCLUSION*

For the aforementioned reasons, Defendant's Motion is **DENIED IN PART** and **GRANTED IN PART.** Plaintiff's claims are dismissed, except for its newly asserted claim of breach of the joint venture agreement. **IT IS FURTHER ORDERED** that Plaintiff amend its Complaint **within 10 days** to reflect its assertion of joint venture status.

New Orleans, Louisiana, this 2nd day of June, 2008.

UNITED STATES DISTRICT JUDGE

---

[2]Plaintiff has failed to point to or provide evidence to uphold its claim that Defendant violated Louisiana's Unfair Trade Practices and Consumer Protection Law, which entails the loss of money or property as a result of the use or employment by another person of an unfair or deceptive method, act, or practice. LSA-R.S. 51:1409.