UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **WHITE HAUL TRANSPORT, INC.** | * | CIVIL ACTION |
| | * | |
| **VERSUS** | * | NO. 06-11260 |
| | * | |
| **COASTAL BRIDGE COMPANY, LLC, ET AL.** | * | SECTION "B"(4) |

<u>ORDER AND REASONS</u>

Before the Court is the Motion for Summary Judgment (Rec. Doc. No. 121) filed by Defendant RCS Contractors, Inc. ("RCS") and the Motion for Partial Summary Judgment (Rec. Doc. No. 117), seeking dismissal of Plaintiff's joint venture and Louisiana Unfair Trade Practices Act ("LUTPA") claims, filed by Defendant Coastal Bridge Company, L.L.C. ("Coastal"). After considering the motions, responses, replies, the applicable law, and for the reasons that follow,

**IT IS ORDERED** that RCS's Motion for Summary Judgment (Rec. Doc. No. 121) is **GRANTED**.

**IT IS FURTHER ORDERED** that Coastal's Motion for Partial Summary Judgment (Rec. Doc. No. 117) is **GRANTED** and that the joint venture and LUTPA claims are hereby **DISMISSED**.

*BACKGROUND*

In response to the lack of housing after Hurricane Katrina, the Federal Emergency Management Authority ("FEMA") contracted with Shaw Environmental, Inc. ("Shaw") to transport and install travel

1

trailers.  To fulfill this FEMA contract, Shaw contracted with RCS, who subcontracted with Coastal, who then subcontracted with Plaintiff White Haul Transport, Inc. ("White Haul").

On December 22, 2006, White Haul filed a complaint against RCS, Shaw, and Coastal.  In its original complaint, White Haul alleged that RCS and Coastal were liable for breach of contract, repudiation of contract, oral breach of contract, breach of contract accompanied by a fraudulent act, violation of Louisiana's Unfair Trade Practices Act, unjust enrichment/*quantum meruit*, and negligent interference with contractual rights.  On July 17, 2007, this Court granted Shaw's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), citing the absence of a contractual relationship between Shaw and White Haul as the basis.

RCS then moved for summary judgment, and this Court granted summary judgment in favor of RCS on June 3, 2008 as to all claims except for White Haul's claim of breach of a joint venture agreement, which was not asserted until Plaintiff filed its opposition to RCS's first motion for summary judgment.  The Court granted Plaintiff leave to amend its complaint to reflect this newly asserted claim.  In light of Plaintiff's amended complaint, RCS once more seeks summary judgment against White Haul over this final claim of breach of a joint venture agreement.  Coastal seeks partial summary judgment against Plaintiff on the breach of joint venture claim and the LUTPA claim.

2

RCS and Coastal maintain that a joint venture agreement never existed here because none of the essential elements of a joint venture agreement are present. Coastal also contends that Plaintiff lacks standing to assert a claim under LUTPA because White Haul is not a "consumer" or "business competitor" – the classes of individuals that LUTPA seeks to protect. Coastal further argues that a LUTPA claim cannot be sustained when the alleged improper conduct falls within a normal business relationship or free enterprise transaction, which Coastal contends was the case here. Furthermore, RCS asks this Court to reserve its right to file a motion for Rule 11 sanctions against Plaintiff in the event that the Court grants summary judgment and dismisses RCS from the suit.

Plaintiff acknowledges that there was no written contract or subcontract between RCS and White Haul, but instead avers that the relationship between RCS, White Haul, and Coastal constituted a joint venture relationship. The existence of this joint venture allegedly gives White Haul rights against the co-venturers and against the venture itself. Plaintiff contends that all of the essential elements of a joint venture agreement are present here and argues that summary judgment is therefore improper due to the existence of material issues of fact.

Plaintiff also argues that it was a "business competitor" within the meaning of LUTPA and that the unusually complex nature

of the trailer installation work took the parties' dealings outside of the scope of a normal business relationship. Plaintiff maintains that Coastal is liable to White Haul for unfair trade practices under LUTPA.

*DISCUSSION*

A.  **Summary Judgment Standard**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Although the Court must consider the evidence and all reasonable inferences in the light most favorable to the nonmovant, the nonmovant must still produce specific facts to demonstrate that a genuine issue exists for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Celotex Corp.*, 477 U.S. at 324. Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v.*

4

*Liljeberg Enters., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

**B. Joint Venture Status**

A joint venture is formed when two or more persons undertake to combine their efforts, knowledge, property, or labor to engage in and carry out a single business venture for joint profit, where profits and losses are shared, with each party having some right of control over the business. *Garber v. Badon & Ranier*, 07-1497, p. 15 (La. App. 3 Cir. 4/2/08); 981 So. 2d 92, 102. A joint venture arises only when the parties intended the relationship to exist; such a relationship is ultimately predicated upon contract, either express or implied. *Riddle v. Simmons*, No. 40,000, p. 18 (La. App. 2 Cir. 2/16/06); 922 So. 2d 1267, 1281; *see also Guillory v. Hayes*, 576 So. 2d 1136, 1142 (La. App. 3 Cir. 1991). There must be some contract between the parties establishing a juridical entity and requiring contribution by all parties of effort or resources. *Latioloas v. BFI of Louisiana, Inc.*, 567 So. 2d 1159, 1161 (La. App. 3 Cir. 1990). Such contributions must be in determined proportions, require joint effort, and involve mutual risk and sharing of profits. *Id.* The essential elements of a joint venture are generally the same as those of partnership; accordingly, joint ventures are governed by the law of partnership. *Moroux v. Toce*, 06-831, p. 12 (La. App. 3 Cir. 11/2/06); 943 So. 2d 1263, 1271.

In contrast to the mutual obligations shared by joint venturers, a subcontractor simply enters into an agreement with

5

another contractor or subcontractor, rather than the principal party whose performance is payment in exchange for completion of the project. *See Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods.*, 448 F.3d 760, 778-79; Black's Law Dictionary 1464 (8th ed. 2004). "A subcontractor is one who takes a portion of a contract from the principal contractor or another subcontractor." *Avondale Indus., Inc. v. Int'l Marine Carriers, Inc.*, 15 F.3d 489, 494 (5th Cir. 1994). Subcontractor relationships do not involve the sharing of profits or resources as do joint ventures; rather, subcontractors and contractors simply exchange performance for payment. Hence, one cannot subcontract for an entity while simultaneously serving as a joint venturer in that entity on the same undertaking.

"[I]t is well settled that what constitutes a joint venture is a question of law, while the existence or nonexistence of a joint venture is a question of fact." *Rester v. Aetna Cas. & Surety Co.*, 598 So. 2d 673, 676 (La. App. 3 Cir. 1992); *Grand Isle Campsites, Inc. v. Cheek*, So. 2d 350, 357 (La. 1972); *Latiolais*, 567 So. 2d at 1161. If Plaintiff is unable to present evidence in support of the pertinent law establishing joint venture status, or if the evidence presented negates the existence of one of the essential elements, then summary judgment may be proper. *See Moroux v. Toce*, 06-831, p. 12 (La. App. 3 Cir. 11/2/06); 943 So. 2d 1263, 1271. In *Moroux*, the Louisiana Court of Appeal affirmed the district court's grant

6

of partial summary judgment in favor of Defendant because Plaintiff admitted through his deposition testimony that he lacked authority and did not share mutual risk, elements necessary for the existence of a joint venture. *Id.*

Similarly, in this case, Plaintiff's own deposition testimony reveals that White Haul lacked the requisite intent to form a joint venture. Specifically, Tim White, principal of Plaintiff White Haul, admitted at deposition, "I don't know if there's a specific joint venture. I think it's more like the actions that actually occurred. . . . that it took the efforts of all parties to make the project flourish." (RCS's Mot. for Summ. J. Ex. G.) This statement demonstrates a lack of intent on the part of Plaintiff to enter into a joint venture. As such, the evidence demonstrates that one of the essential elements of a joint venture agreement is absent here, and summary judgment as to Plaintiff's joint venture claims is therefore proper.

Plaintiff contends that the intent of the parties in creating a joint venture is irrelevant. White Haul's reliance on excerpts from the Louisiana Practice Series on Corporations and irrelevant case law in support of this proposition, however, is misplaced. Section 20:4 of the Louisiana Practice Series on Corporations, relied upon by Plaintiff in its oppositions to summary judgment, states: "Irrelevance of intent to create joint venture -- A relationship may be a joint venture even though the parties

7

expressly disavow an intent to create a joint venture." First, it should be noted that Plaintiffs rely primarily upon a practice series excerpt for the proposition that intent in creating a joint venture is "irrelevant." Furthermore, the authority cited by Plaintiff for this proposition applies in the context of "stranger to the contract" situations, which is not the situation in the case at bar. For example, in *Peterson v. BE&K, Inc. of Alabama*, 652 So. 2d 617 (La. App. 1 Cir. 1995), cited by Plaintiff and in the practice series, Peterson was not a party to the joint venture agreement but filed a tort suit for personal injuries against a party to that agreement. Liability was predicated on the existence of the joint venture. The court found the joint venture to exist in that instance because all of the elements required for a joint venture to exist were met; for example, the two corporate entities involved actually entered into a written "Joint Venture Agreement" that specifically detailed the essential elements necessary for formation of a joint venture. No such agreement exists here, nor does any intent to form such an agreement exist on the part of RCS, Coastal, or White Haul. (*See* RCS's Mot. for Summ. J. Ex. G, in which Plaintiff admits to not having knowledge that a joint venture agreement existed among the parties to this litigation.) A s such, summary judgment must be granted in favor of Defendants on the joint venture claim.

The parties involved here ended up sharing certain risks and

8

rewards inherent in advancing the interests of a common project goal – to install FEMA trailers. This alone, however, is insufficient to create a joint venture. Operating under the terms of a subcontract obviously exposes the subcontractor to certain risks that he must assume. On the other hand, benefits received by that subcontractor belong to that subcontractor alone despite the fact that such benefits result in a net positive for all involved due to the subcontractor's assistance in moving the entire project forward as a whole. Such mutual benefit is insufficient to create a joint venture.

Rather, joint venture agreements require profits and losses on the whole to be shared. For example, in *Peterson*, the parties contemplated that 50.32% of the profits would be allocated to one party while 49.68% of the profits would be allocated to the other party. 652 So. 2d 617, 623. White Haul, on the other hand, was paid per unit item installed in addition to any payable extra costs incurred during the trailer installations. White Haul never obtained an interest in the overall profits or losses of the FEMA trailer installation work. That installation materials happen to have been pooled and shared does not automatically create the common proprietary interest required for a joint venture to exist. As a result, summary judgment in favor of Defendants on the joint venture claim is proper, and Plaintiff's joint venture claims are dismissed.

**C. LUTPA**

Under LUTPA, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or business are . . . declared unlawful." La. Rev. Stat. § 51:1405(A). To seek relief under LUTPA, however, one must be within the class of persons that the statute is meant to protect. The parties here concede that White Haul would have to be a "business competitor" to seek relief under LUTPA. *See W.A. Offshore Equip. Co., Inc. v. Parmatic Filter Corp.*, 767 F. Supp. 125, 126 (E.D. La. 1991) ("It is obvious that the word 'competition' imports the existence of present or potential competitors, and the unfair methods must be such as injuriously affect or tend thus to affect the business of these competitors – that is to say, the trader whose methods are assailed as unfair must have present or *potential* rivals in trade whose business will be, or is likely to be, lessened or otherwise injured.") (citations omitted).

Coastal argues that its arrangement with White Haul was analogous to an employer-employee relationship and that Plaintiff's request for relief under LUTPA is therefore misplaced because the two entities were never in competition with each other. White Haul, however, notes that they were competing with Coastal in the business of installing travel trailers. That White Haul may have been hired by Coastal to do subcontract work in this instance does not automatically negate the actual or potential trade rivalry

10

existing between the two companies with respect to installing trailers after Hurricane Katrina. However, White Haul presents no claim nor any evidence that it sought to establish its own business installing FEMA trailers in competition with Coastal. What White Haul is essentially alleging is that Coastal breached a contract. There was no competition between White Haul and Coastal; rather, White Haul was Coastal's alleged subcontractor, installing FEMA trailers *for* Coastal. With no competition evident here, Plaintiff lacks standing to pursue a claim under LUTPA. *See W.A. Offshore Equipment Co.*, 767 F. Supp. at 127. *Compare Morris v. Rental Tools, Inc.*, 435 So. 2d 528, 532-33 (La. App. 5 Cir. 1983). Summary judgment as to Plaintiff's LUTPA claims against Coastal is proper. Accordingly,

**IT IS ORDERED** that RCS's Motion for Summary Judgment (Rec. Doc. No. 121) is **GRANTED**.[1]

**IT IS FURTHER ORDERED** that Coastal's Motion for Partial Summary Judgment (Rec. Doc. No. 117) is **GRANTED** and that the joint

---

[1] RCS asks the Court to reserve RCS's right to file a motion for Rule 11 sanctions. However, the Court is disinclined to grant this because Plaintiff's joint venture argument does not seem so frivolous as to warrant sanctions, particularly since the Court had granted Plaintiff leave to amend its complaint to include such a claim. In disagreeing with Plaintiff's interpretation/application of the Louisiana Practice Series on Corporations, it cannot be said that Plaintiff's position was either frivolous or sanctionable.

venture and LUTPA claims are hereby **DISMISSED**.

New Orleans, Louisiana, this 5th day of April, 2010.

_____
IVAN L.R. LEMELLE
UNITED STATES DISTRICT COURT